FILED

2014 FEB 20  PM 3: 46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

UNITED STATES OF AMERICA,

            Plaintiff,

            v.

RONALD S. CALDERON and
THOMAS M. CALDERON,

            Defendants.

CR No. CR14-0103

I N D I C T M E N T

[18 U.S.C. § 1341: Mail Fraud; 18
U.S.C. § 1343: Wire Fraud; 18
U.S.C. § 1346: Honest Services
Fraud; 18 U.S.C. § 666: Bribery
Concerning Programs Receiving
Federal Funds; 18 U.S.C.
§ 1956(h): Conspiracy to Commit
Money Laundering; 18 U.S.C.
§ 1956(a)(1)(B)(i): Money
Laundering; 26 U.S.C. § 7206(2):
Aiding in the Filing of False Tax
Return]

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

A.   RELEVANT PERSONS AND ENTITIES

    1.   Defendant RONALD S. CALDERON was an elected California

State Senator who owed a fiduciary duty and a duty of honest

services to the citizens of California, including his

DMM:dmm
MEJ:mej

constituents in the 30th Senate District, which included, among others, the cities of Bell, Bell Gardens, Commerce, Cudahy, Montebello, Norwalk, Pico Rivera, Santa Fe Springs, and Whittier.

2.    Defendant THOMAS M. CALDERON was defendant RONALD S. CALDERON's brother and a former California State Assemblymen for the 58th Assembly District, which included, among others, the cities of Montebello, Norwalk, and Whittier.

3.    The Calderon Group Incorporated ("the Calderon Group") was a privately-owned consulting company founded by defendant THOMAS M. CALDERON after he left the California State Assembly in 2002.

4.    Californians for Diversity was a tax-exempt public benefit corporation under Title 26, United States Code, Section 501(c)(4), for which defendant THOMAS M. CALDERON served as Chief Executive Officer and President.

5.    Michael D. Drobot ("Drobot") owned and/or operated Pacific Hospital of Long Beach ("Pacific Hospital") from in or around 1997 to in or around October 2013.  Pacific Hospital was a hospital located in Long Beach, California, specializing in surgeries, particularly spinal and orthopedic surgeries.

6.    UC-1 was an undercover agent for the Federal Bureau of Investigation ("FBI") who held himself out to defendant RONALD S. CALDERON, defendant THOMAS M. CALDERON, and others as the owner of an independent film studio in Los Angeles, California.

7.    UC-2 was an undercover agent for the FBI who held herself out to defendant RONALD S. CALDERON, defendant THOMAS M. CALDERON, and others as UC-1's girlfriend.

- 2 -

1     8.   UC-3 was an undercover agent for the FBI who held

2   himself out to defendant RONALD S. CALDERON, defendant THOMAS M.

3   CALDERON, and others as the owner of an entertainment company in

4   Florida and an investor in UC-1's independent film studio.

5   B.   THE CALIFORNIA LEGISLATURE

6     9.   The California State Senate (the "Senate") was one of

7   two legislative bodies in the California State Legislature.  The

8   Senate was comprised of approximately 40 elected representatives

9   ("Senators").

10    10.  Senators were agents of California, a government that

11  received more than $10,000 per fiscal year in funds from the

12  United States in the form of grants, contracts, subsidies,

13  loans, guarantees, insurance, and other forms of federal

14  assistance.

15    11.  Senators, in their official capacity, would

16  customarily: (1) draft and vote on legislation; (2) meet with

17  other public officials and their staff to discuss legislation;

18  (3) issue press releases, letters of support, and other public

19  statements indicating their position on legislation; and (4)

20  hire staff members whose salaries were paid for by the State of

21  California to assist them in their responsibilities as Senators.

22  C.   RELEVANT LEGISLATION

23    12.  Pursuant to California law, California's Workers'

24  Compensation System ("CWCS") required California employers to

25  provide workers' compensation benefits to employees who were

26  injured in the course of their employment.

27    13.  Before January 2013, California law, in a provision

28  referred to herein as the "spinal pass-through," allowed a

- 3 -

1   hospital to bill the cost of medical hardware separately from
2   the other costs of a surgery, such as the hospital's and
3   surgeon's services, the reimbursement rates of which were set by
4   a fee schedule.  The hardware was considered a pass-through cost
5   and billing was limited to $250 over what the hospital paid for
6   the hardware.

7       14.  Between January 2010 and August 2012, the California
8   Senate and the Division of Workers' Compensation, an agency
9   within the CWCS system, took several steps designed to modify or
10  eliminate the spinal pass-through.  This was due, in part, to
11  studies that showed eliminating the spinal pass-through could
12  result in savings of as much as $60 million to California
13  taxpayers.

14      15.  By January 2013, California law was changed to
15  eliminate the spinal pass-through; subsequently, reimbursement
16  for all costs of a surgery was limited to a fee schedule.

17      16.  Pursuant to California law, in a provision referred to
18  herein as the "film tax credit," producers of certain
19  independent films and qualified motion pictures in California
20  were entitled to receive a state tax credit for certain
21  expenditures.  The film tax credit defined independent films as
22  motion pictures with a minimum budget of $1,000,000 and a
23  maximum budget of $10,000,000 that were produced by certain
24  individuals and companies.

25      17.  Pursuant to California law, Senators were required to
26  file Statements of Economic Interests and similar forms with the
27  California Fair Political Practices Commission, wherein they
28  disclosed, among other things, certain income, gifts, loans, and

travel they had received, as well as certain payments they had requested, solicited, or suggested be made to third parties.

18.   These Introductory Allegations are hereby incorporated by reference into each count of this Indictment as though set forth fully therein.

COUNTS ONE THROUGH TEN

[18 U.S.C. §§ 1341, 1343, 1346]

A.    THE SCHEME TO DEFRAUD

Beginning on a date unknown to the Grand Jury and continuing through on or about May 4, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the citizens of the State of California of their right to the honest services of their elected officials through bribery and kickbacks, and the concealment of material information, which scheme is described further below.

B.    MEANS AND METHODS OF THE SCHEME TO DEFRAUD

Defendant RONALD S. CALDERON, together with others known and unknown to the Grand Jury, defrauded the citizens of the State of California by the following means and methods:

1.    Defendant RONALD S. CALDERON would seek and accept bribes and kickbacks in the form of financial benefits and payments to himself, his children, and to Californians for Diversity and the Calderon Group.

2.    Defendant RONALD S. CALDERON would perform official acts favorable to the individuals paying him bribes and kickbacks, including introducing and supporting legislation on their behalf, and seeking the support of other public officials and their staff for such legislation.

3.    Defendant RONALD S. CALDERON would disclose some of the official acts he had performed on behalf of co-schemers

1 | paying him bribes to induce others to continue paying him
2 | bribes.

3 |     4.    Defendant RONALD S. CALDERON would take steps to
4 | disguise, conceal, and cover up the bribe payments he was
5 | receiving and, in several instances, the official acts he had
6 | performed in exchange for the bribe payments.

7 |     Bribes Involving the Spinal Pass-Through

8 |     5.    Defendant RONALD S. CALDERON would solicit and accept
9 | benefits, such as employment for his son, trips on privately-
10 | chartered airplanes, golf at exclusive, high-end golf resorts,
11 | and meals at expensive restaurants, from Drobot with the
12 | understanding that such benefits were to influence, and in
13 | exchange for, defendant RONALD S. CALDERON's official acts in
14 | connection with the spinal pass-through and worker's
15 | compensation legislation and regulation.

16 |     6.    Defendant RONALD S. CALDERON would solicit Drobot
17 | to hire defendant RONALD S. CALDERON's son at one or more of
18 | Drobot's companies during the summers of 2010, 2011, and 2012,
19 | and to pay defendant RONALD S. CALDERON's son approximately
20 | $10,000 per summer.

21 |     7.    Drobot would agree to hire defendant RONALD S.
22 | CALDERON's son to perform clerical duties at one or more of
23 | Drobot's companies during the summers of 2010, 2011, and 2012,
24 | and cause defendant RONALD S. CALDERON's son to be paid
25 | approximately $10,000 per summer, or approximately $30,000
26 | total, for approximately 15 days of work per summer, which
27 | payments were disbursed on or about the following dates:

28 |

| DATE | AMOUNT |
|------|--------|
| 7/13/2010 | $10,000 |
| 7/11/2011 | $5,000 |
| 8/16/2011 | $5,000 |
| 7/13/2012 | $1,490.95 |
| 7/27/2012 | $1,490.95 |
| 8/02/2012 | $7,018.10 |

8.    Defendant RONALD S. CALDERON would perform official acts favorable to Drobot in connection with the spinal pass-through and worker's compensation legislation and regulation.

9.    Defendant RONALD S. CALDERON would communicate with other public officials and their staff and attempt to convince them to take action favorable to Drobot in connection with the spinal pass-through and worker's compensation legislation and regulation.   For example:

a.    In or about February 2010, defendant RONALD S. CALDERON met with Drobot in or around Sacramento, California and solicited Drobot to hire defendant RONALD S. CALDERON's son for the next several summers and to pay him $10,000 per summer, so that defendant RONALD S. CALDERON's son would have enough money to pay his college tuition.

b.    In or about April 2010, defendant RONALD S. CALDERON met with a Director at the Division of Workers' Compensation and discussed the negative impact that proposed regulations would have on Pacific Hospital and other hospitals.

c.    On or about February 18, 2011, defendant RONALD S. CALDERON met with Senator A and requested that Senator A

1  introduce legislation in the Senate favorable to Drobot and
2  Pacific Hospital ("Bill #1").

3       d.   On or about March 5, 2011, defendant RONALD S.
4  CALDERON wrote an email to Senator B, discussing the importance
5  of the spinal pass-through and worker's compensation legislation
6  and regulation.

7       e.   On or about June 12, 2012, defendant RONALD S.
8  CALDERON and Drobot met with Senator C and discussed the
9  negative impact Senator C's proposed legislation would have on
10 Pacific Hospital and other hospitals ("Bill #2").

11      Bribes Involving the Film Tax Credit

12      10.  Defendant RONALD S. CALDERON would solicit and accept
13 financial benefits, such as trips to Las Vegas, meals, and
14 employment for his daughter, from UC-1 and UC-3 with the
15 understanding that such benefits were to influence, and in
16 exchange for, defendant RONALD S. CALDERON's official acts in
17 connection with the film tax credit.

18      11.  Defendant RONALD S. CALDERON would negotiate the terms
19 of his daughter's employment with UC-1 and UC-3, including that
20 they were under no obligation to continue paying his daughter if
21 defendant RONALD S. CALDERON did not "deliver" on his support
22 for the film tax credit.

23      12.  Defendant RONALD S. CALDERON would cause UC-1 and UC-3
24 to pay his daughter multiple payments of $3,000 or more under
25 what purported to be a "Studio Services Agreement," even though
26 defendant RONALD S. CALDERON knew his daughter was not expected
27 to perform any work under the purported agreement and that the
28 payments of $3,000 or more were to influence, and in exchange

for, defendant RONALD S. CALDERON's official acts in connection
with the film tax credit.

13.   Defendant RONALD S. CALDERON would cause UC-1 and UC-3
to make the payments of $3,000 or more, which totaled
approximately $39,000, on or about the following dates, in the
following approximate disbursements:

| DATE | AMOUNT |
|------|--------|
| 7/19/2012 | $3,000 |
| 8/01/2012 | $3,000 |
| 9/08/2012 | $3,000 |
| 9/28/2012 | $3,000 |
| 11/01/2012 | $3,000 |
| 12/01/2012 | $3,000 |
| 1/01/2013 | $3,000 |
| 2/02/2013 | $3,000 |
| 3/02/2013 | $3,000 |
| 3/27/2013 | $3,000 |
| 4/18/2013 | $9,000 |

14.   Defendant RONALD S. CALDERON would inform UC-1 of the
official acts he had performed on behalf of Drobot in connection
with the spinal pass-through and worker's compensation
legislation and regulation to induce UC-1 to continue making
bribe payments in connection with the film tax credit.

15.   Defendant RONALD S. CALDERON would perform
official acts favorable to UC-1 and UC-3 in connection with the
film tax credit.  For example:

        a.   On or about September 12, 2012, defendant RONALD
S. CALDERON signed a letter in his capacity as a Senator
expressing his support for amending the film tax credit to lower
the threshold for independent films from $1 million to $750,000.

- 10 -

b.  On or about October 25, 2012, defendant RONALD S. CALDERON met with Senator B to discuss the benefits of lowering the film tax credit threshold for independent films below $1 million.

c.  On or about February 19, 2013, defendant RONALD S. CALDERON caused legislation to be introduced in the Senate, which he intended to use as a vehicle to create a separate tax credit for independent filmmakers with budgets below $1 million.

d.  On or about April 24, 2013, defendant RONALD S. CALDERON met with Senator C to discuss legislation that would create a separate tax credit for independent filmmakers and producers of commercials with budgets below $1 million.

Bribes Involving the Hiring of UC-2

16.  Defendant RONALD S. CALDERON would solicit and accept benefits, including money towards his son's college tuition and a large financial contribution to Californians for Diversity, from UC-1 with the understanding that such benefits were to influence, and in exchange for, defendant RONALD S. CALDERON's official acts in connection with hiring UC-2 to defendant RONALD S. CALDERON's Senate staff.

17.  Defendant RONALD S. CALDERON would solicit and accept a $5,000 payment towards his son's college tuition from UC-1.

18.  Defendant RONALD S. CALDERON would direct UC-1 to make a $25,000 payment to Californians for Diversity after explaining to UC-1 that defendant RONALD S. CALDERON and Thomas M. Calderon intended to use that money to pay themselves.

19.  Defendant RONALD S. CALDERON would perform official

1  acts favorable to UC-1 and UC-2 in connection with the hiring of
2  UC-2 to defendant RONALD S. CALDERON's Senate staff.  For
3  example:

4          a.   On or about January 11, 2013, defendant RONALD S.
5  CALDERON sought Senator A's approval to hire UC-2 as a member of
6  defendant RONALD S. CALDERON's Senate staff.

7          b.   On or about January 16, 2013, defendant RONALD S.
8  CALDERON requested the Secretary of the Senate to hire UC-2 as a
9  member of defendant RONALD S. CALDERON's Senate staff.

10      The Concealment of Material Information

11      20.  Defendant RONALD S. CALDERON would take steps to
12  conceal and disguise the bribe payments he received and, in
13  several instances, the official acts he performed in exchange
14  for the bribe payments.  For example:

15          a.   In or about February 2011, defendant RONALD S.
16  CALDERON had Senator A introduce Bill #1 in the Senate to
17  conceal from the citizens of California that defendant RONALD S.
18  CALDERON was a main proponent of legislation favorable to
19  Drobot.

20          b.   On or about September 12, 2012, defendant RONALD
21  S. CALDERON signed an official letter indicating his support for
22  lowering the threshold for independent films from $1 million to
23  $750,000, knowing the letter was addressed to a fictitious
24  organization, to conceal from the citizens of California that
25  the letter was written at the request, and for the benefit, of
26  UC-1.

27          c.   On or about January 16, 2013, defendant RONALD S.
28  CALDERON falsely claimed that he was hiring UC-2 to service the

1   new communities in his Senate district to conceal from the
2   citizens of California that UC-2 was actually being hired at the
3   request, and for the benefit, of UC-1.

4          d.   On or about February 14, 2013, defendant RONALD
5   S. CALDERON failed to disclose to the California Fair Political
6   Practices Commission that he had directed UC-1 to make a $25,000
7   contribution to Californians for Diversity to conceal from the
8   citizens of California the fact that the payment was made at his
9   behest.

10         e.   On or about March 1, 2013, defendant RONALD S.
11  CALDERON caused a false Statement of Economic Interest,
12  California Form 700, to be submitted to the California Fair
13  Political Practices Commission, which failed to disclose certain
14  gifts, travel, and money defendant RONALD S. CALDERON had
15  received from Drobot and UC-1 during 2012.

16  C.   THE USE OF WIRES

17         On or about the dates set forth below, within the Central
18  District of California and elsewhere, defendant RONALD S.
19  CALDERON, for the purpose of executing the above-described
20  scheme to defraud, caused the transmission of the following
21  items by means of wire and radio communication in interstate and
22  foreign commerce:

23  //
24  //
25
26
27
28

- 13 -

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| ONE | 6/18/2012 | An email from defendant RONALD S. CALDERON's America Online email account to Drobot's email account at Pacific Hospital regarding when and how much money defendant RONALD S. CALDERON's son should be paid by Drobot |
| TWO | 6/28/2012 | An email from defendant RONALD S. CALDERON's America Online email account to Drobot's email account at Pacific Hospital regarding when and how much money defendant RONALD S. CALDERON's son should be paid by Drobot |

D.   THE USE OF THE MAIL

On or about the dates set forth below, within the Central District of California and elsewhere, defendant RONALD S. CALDERON, for the purpose of executing the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| THREE | 7/20/2012 | Envelope addressed to what was represented to be UC-1's independent film studio in Los Angeles, California, containing a "Studio Services Agreement" signed by defendant RONALD S. CALDERON's daughter and UC-1 |
| FOUR | 8/12/2012 | Envelope addressed to defendant RONALD S. CALDERON at his home address containing a $3,000 check payable to defendant RONALD S. CALDERON's daughter |
| FIVE | 9/28/2012 | Envelope addressed to defendant RONALD S. CALDERON at his home address containing a $3,000 check payable to defendant RONALD S. CALDERON's daughter |

- 14 -

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| SIX | 1/03/2013 | Envelope addressed to defendant RONALD S. CALDERON at his home address containing a $3,000 check payable to defendant RONALD S. CALDERON's daughter |
| SEVEN | 1/15/2013 | Envelope addressed to Californians for Diversity in Covina, California, containing a $25,000 check payable to Californians for Diversity |
| EIGHT | 2/05/2013 | Envelope addressed to defendant RONALD S. CALDERON at his home address containing a $3,000 check payable to defendant RONALD S. CALDERON's daughter |
| NINE | 2/27/2013 | Envelope addressed to UC-2's mailing address in Los Angeles, California, containing a Senate Benefits Package |
| TEN | 3/01/2013 | Envelope addressed to defendant RONALD S. CALDERON at his home address containing a $3,000 check payable to defendant RONALD S. CALDERON's daughter |

COUNT ELEVEN

[18 U.S.C. § 666(a)(1)(B)]

On or about July 13, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON, an agent of the State of California, a state government that received in any one-year period benefits in excess of $10,000 under a Federal program, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of California having a value of $5,000 or more.  Specifically, defendant RONALD S. CALDERON solicited, demanded, accepted, and agreed to accept from Michael D. Drobot employment for defendant RONALD S. CALDERON's son, intending to be influenced and rewarded in connection with supporting the spinal pass-through and worker's compensation legislation and regulation.

COUNT TWELVE

[18 U.S.C. § 666(a)(1)(B)]

Between on or about July 20, 2011 and on or about August 16, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON, an agent of the State of California, a state government that received in any one-year period benefits in excess of $10,000 under a Federal program, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of California having a value of $5,000 or more.  Specifically, defendant RONALD S. CALDERON solicited, demanded, accepted, and agreed to accept from Michael D. Drobot employment for defendant RONALD S. CALDERON's son, intending to be influenced and rewarded in connection with supporting the spinal pass-through and worker's compensation legislation and regulation.

COUNT THIRTEEN

[18 U.S.C. § 666(a)(1)(B)]

Between on or about June 18, 2012 and on or about August 14, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON, an agent of the State of California, a state government that received in any one-year period benefits in excess of $10,000 under a Federal program, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of California having a value of $5,000 or more.  Specifically, defendant RONALD S. CALDERON solicited, demanded, accepted, and agreed to accept from Michael D. Drobot employment for defendant RONALD S. CALDERON's son, intending to be influenced and rewarded in connection with supporting the spinal pass-through and worker's compensation legislation and regulation.

COUNT FOURTEEN

[18 U.S.C. § 666(a)(1)(B)]

Between on or about February 24, 2012 and on or about May 4, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON, an agent of the State of California, a state government that received in any one-year period benefits in excess of $10,000 under a Federal program, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, something of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the State of California having a value of $5,000 or more.  Specifically, defendant RONALD S. CALDERON solicited, demanded, accepted, and agreed to accept from UC-1 and UC-3, money, employment for defendant RONALD S. CALDERON's daughter, and other financial benefits, intending to be influenced and rewarded in connection with the Film tax credit legislation and the hiring of UC-2 to a Senate staff position.

COUNT FIFTEEN

[18 U.S.C. § 1956(h)]

A. THE OBJECT OF THE CONSPIRACY

Between in or about January 2013 and on or about May 4, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants RONALD S. CALDERON, THOMAS M. CALDERON, unindicted coconspirator #1, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to conduct financial transactions affecting interstate commerce involving the proceeds of specified unlawful activity, namely, bribery, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of said proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

B. THE MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

1. Defendant RONALD S. CALDERON would solicit and accept bribes and kickbacks from UC-1 and UC-3.

2. Defendant RONALD S. CALDERON would direct UC-1 and UC-3 to make bribe payments to Californians for Diversity and the Calderon Group, two entities over which defendant THOMAS M. CALDERON had financial control.

3. Defendant THOMAS M. CALDERON would use the bribe payments made by UC-1 and UC-3 to engage in monetary

- 20 -

1   transactions at financial institutions, including California

2   Bank and Trust and Camino Federal Credit Union, designed to

3   conceal and disguise the nature, location, source, ownership,

4   and control of the bribe payments.

5   C.   OVERT ACTS

6        In furtherance of the conspiracy, and to accomplish its

7   object, defendants RONALD S. CALDERON, THOMAS M. CALDERON,

8   unindicted coconspirator #1, and others known and unknown to the

9   Grand Jury, committed and willfully caused others to commit the

10  following overt acts, among others, in the Central District of

11  California and elsewhere:

12       Overt Act No. 1:   On or about January 11, 2013, defendant

13  RONALD S. CALDERON directed UC-1 to make a contribution of

14  approximately $25,000 to Californians for Diversity, an entity

15  over which defendant THOMAS M. CALDERON had financial control.

16       Overt Act No. 2:   On or about January 22, 2013, defendant

17  THOMAS M. CALDERON caused Californians for Diversity to issue a

18  payment of $6,500 to the Calderon Group.

19       Overt Act No. 3:   On or about January 23, 2013, defendant

20  THOMAS M. CALDERON caused a $6,500 check from Californians for

21  Diversity to be deposited into the Calderon Group credit union

22  account at Camino Federal Credit Union (XXX53-9).

23       Overt Act No. 4:   On or about February 28, 2013, defendant

24  THOMAS M. CALDERON caused a $6,500 check from Californians for

25  Diversity to be deposited into the Calderon Group credit union

26  account at Camino Federal Credit Union (XXX53-9).

27       Overt Act No. 5:   On or about March 14, 2013, defendant

28  THOMAS M. CALDERON caused a transfer of approximately $700 from

his personal credit union account to defendant RONALD S. CALDERON's credit union account at Camino Federal Credit Union (XXX56-9).

Overt Act No. 6:  On or about March 29, 2013, defendant RONALD S. CALDERON spoke with defendant THOMAS M. CALDERON over the telephone and asked defendant THOMAS M. CALDERON how much more money defendant THOMAS M. CALDERON could draw from Californians for Diversity "without drawing too much attention."

Overt Act No. 7:  On or about April 4, 2013, defendant RONALD S. CALDERON spoke with unindicted coconspirator #1 over the telephone and discussed ways of getting money from UC-3 to defendant RONALD S. CALDERON, including using defendant THOMAS M. CALDERON to "funnel" the money.

Overt Act No. 8:  On or about April 11, 2013, defendant THOMAS M. CALDERON caused a $6,500 check from Californians for Diversity to be deposited into the Calderon Group credit union account at Camino Federal Credit Union (XXX53-9).

Overt Act No. 9:  On or about April 12, 2013, defendant THOMAS M. CALDERON caused a transfer of approximately $7,000 from the Calderon Group credit union account at Camino Federal Credit Union (XXX53-9) to defendant THOMAS M. CALDERON's personal credit union account at Camino Federal Credit Union (XXX91-9).

Overt Act No. 10:  On or about April 12, 2013, defendant THOMAS M. CALDERON caused a withdrawal of approximately $9,900 in cash from his personal credit union account at Camino Federal Credit Union (XXX91-9).

Overt Act No. 11: On or about April 12, 2013, defendant RONALD S. CALDERON spoke with defendant THOMAS M. CALDERON over the telephone and told defendant THOMAS M. CALDERON that he had "closed the deal" with UC-3 and that UC-3 had agreed to send future bribe payments through defendant THOMAS M. CALDERON's company, the Calderon Group.

Overt Act No. 12: On or about April 12, 2013, defendant RONALD S. CALDERON spoke with defendant THOMAS M. CALDERON over the telephone and discussed meeting later that day so defendant THOMAS M. CALDERON could give defendant RONALD S. CALDERON "half" of the money defendant RONALD S. CALDERON was to receive from defendant THOMAS M. CALDERON.

Overt Act No. 13: On or about April 16, 2013, defendant THOMAS M. CALDERON instructed UC-3 to send a check for $30,000 to the Calderon Group via United States mail, which defendant THOMAS M. CALDERON knew included $9,000 in bribe payments to defendant RONALD S. CALDERON's daughter.

Overt Act No. 14: On or about April 29, 2013, defendant THOMAS M. CALDERON caused the $30,000 check from UC-3 to be deposited into the Calderon Group's credit union account at Camino Federal Credit Union (XXX53-9).

Overt Act No. 15: On or about April 29, 2013, defendant THOMAS M. CALDERON caused a $9,000 check from the Calderon Group credit union account at Camino Federal Credit Union (XXX53-9) to be issued to defendant RONALD S. CALDERON's daughter.

COUNTS SIXTEEN THROUGH TWENTY-TWO

[18 U.S.C. § 1956(a)(1)(B)(i)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants RONALD S. CALDERON, THOMAS M. CALDERON, and others known and unknown to the Grand Jury, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, knowingly conducted and attempted to conduct, the following financial transactions affecting interstate commerce, which transactions, in fact, involved the proceeds of specified unlawful activity, namely, bribery, knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| SIXTEEN | 1/23/2013 | The deposit of a check issued from Californians for Diversity's bank account for approximately $6,500 into the Calderon Group credit union account at Camino Federal Credit Union (XXX53-9) |
| SEVENTEEN | 2/28/2013 | The deposit of a check issued from Californians for Diversity's bank at California Bank and Trust for approximately $6,500 into the Calderon Group credit union account at Camino Federal Credit Union (XXX53-9) |
| EIGHTEEN | 3/14/2013 | The transfer of approximately $700 from defendant THOMAS M. CALDERON's personal credit union account at Camino Federal Credit Union (XXX91-9) to defendant RONALD S. CALDERON's personal credit union account at Camino Federal Credit Union (XXX56-9) |

- 24 -

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| NINETEEN | 4/11/2013 | The deposit of a check issued from Californians for Diversity's bank account at California Bank and Trust for approximately $6,500 into the Calderon Group credit union account at Camino Federal Credit Union (XXX53-9) |
| TWENTY | 4/12/2013 | The transfer of approximately $7,000 from the Calderon Group bank account at Camino Federal Credit Union (XXX53-9) to defendant THOMAS M. CALDERON's personal credit union account at Camino Federal Credit Union (XXX91-9) |
| TWENTY-ONE | 4/12/2013 | The withdrawal of approximately $9,900 in cash from defendant THOMAS M. CALDERON's personal credit union account at Camino Federal Credit Union (XXX91-9). |
| TWENTY-TWO | 4/29/2013 | The issuance of a check for approximately $9,000 from the Calderon Group bank account at Camino Federal Credit Union (XXX53-9) made payable to defendant RONALD S. CALDERON's daughter. |

COUNT TWENTY-THREE

[26 U.S.C. § 7206(2)]

On or about March 28, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation of a United States Individual Income Tax Return, Form 1040, to the Internal Revenue Service, for defendant RONALD S. CALDERON's son as to the 2010 tax year, which was false and fraudulent as to material matters, in that it falsely claimed approximately $6,826 in business expense deductions from the $10,000 defendant RONALD S. CALDERON's son received through his summer employment with International Implants Incorporated, one of Michael D. Drobot's companies, when, in fact, as defendant RONALD S. CALDERON well knew, his son had not incurred said amount of business expenses.

COUNT TWENTY-FOUR

[26 U.S.C. § 7206(2)]

On or about April 4, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant RONALD S. CALDERON willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation of a United States Individual Income Tax Return, Form 1040, to the Internal Revenue Service, for defendant RONALD S. CALDERON's son as to the 2011 tax year, which was false and fraudulent as to material matters, in that it falsely claimed approximately $6,805 in business expense deductions from the $10,000 defendant RONALD S. CALDERON's son received through his

//

//

1   summer employment with International Implants Incorporated, on

2   of Michael D. Drobot's companies, when, in fact, as defendant

3   RONALD S. CALDERON well knew, his son had not incurred said

4   amount of business expenses.

5

6                              A TRUE BILL

7

8                              /s/

9                            Foreperson

10  ANDRÉ BIROTTE JR.
     United States Attorney

11

12

13  ROBERT E. DUGDALE
     Assistant United States Attorney

14  Chief, Criminal Division

15  LAWRENCE S. MIDDLETON
     Assistant United States Attorney

16  Chief, Public Corruption & Civil Rights
     Section

17

18  DOUGLAS M. MILLER
     MACK E. JENKINS

19  Assistant United States Attorneys
     Public Corruption & Civil Rights Section

20

21

22

23

24

25

26

27

28