1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   DOUGLAS M. MILLER (SBN: 240398)
4  MACK E. JENKINS (SBN: 242101)
   Assistant United States Attorneys
5  Public Corruption & Civil Rights Section
        1300 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone:  (213) 894-2216/2091
        Facsimile:  (213) 894-6436
8       E-mail: douglas.m.miller@usdoj.gov
                mack.jenkins@usdoj.gov
9

10 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

11

12                  UNITED STATES DISTRICT COURT

13             FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,        CR No. 14-103-CAS

15          Plaintiff,              GOVERNMENT'S EX PARTE APPLICATION
                                    FOR A PROTECTIVE ORDER;
16             v.                   DECLARATION OF AUSA DOUGLAS M.
                                    MILLER
17 RONALD S. CALDERON and
   THOMAS M. CALDERON,              Trial Date:    Sept. 16, 2014
18                                  Time:          9:30 AM
            Defendants.             Place:         Courtroom 5
19
                                    (PROPOSED ORDER FILED SEPARATELY)
20

21

22

23

24     Plaintiff, United States of America, by and through its counsel

25 of record, the United States Attorney for the Central District of

26 California, hereby applies ex parte for a protective order relating

27 to its production of discovery in the above captioned case.

28

1  The government makes this application because the parties have

2  attempted for several weeks to negotiate a joint protective order

3  relating to the discovery but, while one defendant agrees to the

4  terms, one defendant refuses to sign it.  This application is based

5  on the attached declaration of Douglas M. Miller, the attached

6  exhibits, the files and records of this case, and such further

7  evidence and argument as may be presented at any hearing on this

8  application.

9  Dated: March 21, 2014               Respectfully submitted,

10                                     ANDRÉ BIROTTE JR.
                                       United States Attorney

11                                     ROBERT E. DUGDALE
12                                     Assistant United States Attorney
                                       Chief, Criminal Division

13

14               /s/
                                       DOUGLAS M. MILLER
15                                     Assistant United States Attorney

16                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF DOUGLAS M. MILLER**

I, Douglas M. Miller, declare and state as follows:

1.   I am an Assistant United States Attorney for the Central District of California and am assigned to the prosecution of United States v. Ronald S. Calderon and Thomas M. Calderon, CR No.14-103-CAS.   I make this declaration in support of the government's ex parte application for a protective order relating to its discovery production.

2.   The indictment in this case was filed on February 20, 2014.   Defendant Thomas M. Calderon made his initial appearance on February 21, 2014.   Defendant Ronald S. Calderon made his initial appearance on February 24, 2014.

3.   Two days later, on February 26, 2014, I contacted defense counsel for defendants Ronald S. Calderon and Thomas M. Calderon ("the defendants") via email to discuss a discovery plan.   I told defense counsel there were well over 100,000 pages of discovery in this case and that I was in the process of preparing the first wave of that discovery, which would be comprised primarily of documents the government had obtained by grand jury subpoena (e.g., bank records, flight records, credit card records, and business records). I indicated that I was also prepared to include all of the grand jury testimony in the first wave of discovery and that I could produce the first wave by as early as March 7, 2014, if the parties could agree on a reasonable protective order.   I told defense counsel that I wanted the thrust of the protective order to simply be that the discovery would only be used for the preparation of a defense to the charges and would not be provided to any uninterested parties absent a court order.

1    4.    I told the defense counsel that I would likely have a

2 second wave of discovery, which would include several FBI files,

3 pre-indictment pleadings, government correspondence, and government

4 recordings, ready for production by the end of March 2014.  I told

5 defense counsel I needed a little more time to prepare the second

6 wave of discovery because several of the items in that wave of

7 discovery needed to be redacted before it could be produced.  I

8 explained, as an example, that several of the FBI files also

9 contained information relating to other unrelated investigations

10 that needed to be redacted prior to production.

11    5.    The defense counsel asked me to send over a draft of the

12 proposed protective order for consideration.  Nevertheless, counsel

13 for defendant Thomas M. Calderon, Sheppard Kopp, indicated that he

14 would probably be okay with a protective order over the first wave

15 of discovery, as long as it did not prohibit his clients from seeing

16 those items and did not limit their ability to share those items

17 with witnesses in the case.

18    6.    I sent the first draft of the proposed protective order to

19 defense counsel on February 28, 2014.  See Exhibit A.  As discussed

20 in my earlier email, the thrust of the protective order was that

21 "the parties [had] agreed that all of the discovery and the

22 information derived therefrom should be subject to a protective

23 order and should only be used by the defendants, their attorneys, or

24 other individuals or entities acting within the attorney-client

25 relationship for trial preparation."  It also explained that "[t]he

26 purpose of this protective order [was] to prevent the unauthorized

27 dissemination, distribution, or use of materials for any purpose

28 other than the preparation for trial."

2

1    7.    On March 6, 2014, both defense counsels objected to this

2    first draft of the protective order.  They did not agree with the

3    extent of the protective order, which would have covered all of the

4    discovery, and felt it should be limited to bank records and

5    personal identifying information.  Defense counsel said their rules

6    of professional conduct and status as officers of the court were

7    adequate protection for the rest of the discovery.  Mr. Kopp

8    represented that he personally had no intention of using the

9    discovery materials for any purpose other than preparing the

10   defense.  On March 7, 2014, Mr. Kopp sent the government a revised

11   protective order that was limited only to "bank records and personal

12   identifying information."  See Exhibit B.

13   8.    Three days later, on March 10, 2014, I advised defense

14   counsel that I had looked over Mr. Kopp's revisions to the

15   protective order and I was confident the parties could still reach

16   an agreement on a joint protective order.  I explained that my

17   reason for wanting a broader protective order was my concern that

18   certain sensitive materials in the discovery would somehow be

19   mishandled and used for some reason other than preparing a defense.

20   The one obvious example I provided was grand jury testimony, which

21   the government was under no obligation to produce so far in advance

22   of trial, being provided to the media.  I further explained that

23   this concern was limited to the grand jury testimony, a few FBI

24   reports, and one brief FBI recording.

25   9.    Although 18 U.S.C. § 3500 (the Jencks Act) did not require

26   the government to turn over much of the grand jury testimony at this

27   early stage, I told defense counsel I was prepared to turn over

28   these materials immediately and give them ample time to review them

3

1 | and prepare for trial, if they would agree to a protective order
2 | that was slightly more expansive than the one Mr. Kopp proposed.  In
3 | addition to protecting the bank records and personal identifying
4 | information, it would protect the grand jury testimony, a few FBI
5 | reports, and one FBI recording.  In other words, the protective
6 | order would no longer apply to all discovery, but rather three
7 | discreet areas of discovery.  I sent this third draft of the
8 | proposed protective order to defense counsel that same day (March
9 | 10, 2014).  See Exhibit C.

10 |        10.  On March 14, 2013, Mr. Kopp advised me that he and his
11 | client agreed with the third draft of the protective order and were
12 | prepared to sign it.  Counsel for defendant Ronald S. Calderon, Mark
13 | Geragos, did not respond to the third draft of the protective order
14 | until March 20, 2014.  Mr. Geragos indicated that he objected to the
15 | third draft of the protective order and still felt it should be
16 | limited to financial and personal information.  Despite my earlier
17 | explanation, Mr. Geragos said he did not understand why the
18 | protective order needed to include information other than financial
19 | and personal information.

20 |        11.  Now that over a month has passed since the defendants have
21 | been indicted and because Mr. Kopp and defendant Thomas M. Calderon
22 | have agreed to it, I request that the Court authorize a protective
23 | order consistent with the third draft of the protective order.  As
24 | explained above, this protective order is limited to bank records
25 | and personal identifying information, which all of the parties agree
26 | should be covered by the protective order, as well the grand jury
27 | transcripts, the FBI reports, and the FBI recordings that the
28 | government marks with the bates-stamp prefix "PROTECTIVE ORDER."  As

1  the government represented to defense counsel, the FBI reports the

2  government would mark in this way are a small universe of documents,

3  and just one FBI recording.

4      12.  On or about March 20, 2014, I contacted defense counsel

5  and informed them that I would be filing the present ex parte

6  application and asked for their position on the ex parte nature of

7  the application.  Mr. Kopp informed me that he does not oppose the

8  application or the ex parte nature of the application.  Mr. Geragos

9  did not indicate whether he opposed the ex parte nature of the

10  application, but indicated that he did oppose the proposed

11  protective order for the reasons stated herein.

12      I declare under penalty of perjury under the laws of the United

13  States of America that the foregoing is true and correct and that

14  this declaration is executed at Los Angeles, California, on March

15  21, 2014.

16

17                                      /s/
                               DOUGLAS M. MILLER

18

19

20

21

22

23

24

25

26

27

28