ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS M. MILLER (SBN: 240398)
MACK E. JENKINS (SBN: 242101)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2216/2091
     Facsimile: (213) 894-6436
     E-mail: douglas.m.miller@usdoj.gov
             mack.jenkins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | REPLY TO DEFENDANT RONALD S. CALDERON'S OPPOSITION TO THE GOVERNMENT'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER; EXHIBITS |
|---|---|
| Plaintiff, | |
| v. | Trial Date: Sept. 16, 2014 |
| RONALD S. CALDERON and THOMAS M. CALDERON, | Time: 9:30 AM<br>Place: Courtroom 5 |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its Reply to Defendant Ronald S. Calderon's Opposition to the Government's Ex Parte Application for a Protective Order.

//

//

This reply is based upon the attached memorandum of points and authorities, the attached exhibits, the files and records in this case, and further evidence and argument the Court may permit.

Dated: March 31, 2014                    Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


           /s/
DOUGLAS M. MILLER
MACK E. JENKINS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On March 21, 2014, the government filed an ex parte application for a protective order relating to its production of discovery in the above-captioned case. (Dkt. # 30). The government did not caption the application as a motion, but rather explained to the Court that the parties had attempted for several weeks to negotiate a joint protective order and although two of the parties had agreed on a proposed protective order, one of the parties objected to limited portions of it. (Id. at 3-7). The dispute came down to "the grand jury testimony, a few FBI reports, and one FBI recording." (Id. at 3). The government did not argue or even suggest that any of the parties had failed to negotiate in good faith. The government simply asked for the Court's intervention because "over a month [had] passed since the defendants [had] been indicted" and because the government takes seriously its need to provide timely discovery to the defendant, while not sacrificing related concerns such as ongoing investigations and personal privacy. (Id. at 4).

The government points out these concerns because defendant Ronald S. Calderon and his counsel, Mark Geragos, have now filed an opposition to the ex parte application attacking the government and accusing it of acting in bad faith. To the contrary, the government has repeatedly sought ways to produce discovery to the defendants so that they can prepare their respective cases for trial. Specifically, they accuse the government of leaking a sealed search warrant affidavit to the media and of misrepresenting to the Court the scope of a proposed protective order. (Opp., pp. 3, 4-5). In addition to these baseless attacks, Mr. Geragos asks the Court to

apply the wrong legal standard when resolving the dispute over the protective order, claiming that there must be "<u>good cause</u> for a protective order covering grand jury testimony." (<u>Id.</u> at 3) (emphasis added). For these reasons, and to correct the record, the government files this brief reply.

**II. ARGUMENT**

    **A.   DEFENDANT RONALD S. CALDERON'S OPPOSITION IS FACTUALLY INACCURATE AND ASKS THE COURT TO APPLY THE WRONG LEGAL STANDARD**

        1.  <u>Defendant Ronald S. Calderon's Counsel Said He Had No Objection to a Protective Order That Would Cover "Virtually All of the Discovery"</u>

Defendant Ronald S. Calderon contends that the government is seeking a protective order that would cover "virtually all of the discovery the government intends to produce." (Opp., p. 1). While it is true that the government's proposed protective order would cover virtually all of the discovery in this case, Mr. Geragos indicated to the government that he had "no objection" to that aspect of the protective order.

As the government explained in its ex parte application, the parties attempted for several weeks to negotiate a joint protective order. (Dkt. #30, p. 2). The parties exchanged three drafts of a proposed protective order, but failed to reach a unanimous agreement as to which protective order should apply to the discovery. The government explained to defense counsel, including Mr. Geragos, that there were essentially three categories of discovery: (1) documents the government had obtained through court orders and grand jury subpoenas (e.g., bank records, tax records, toll records, business records, and public records); (2) grand jury testimony, a few FBI reports, and one brief FBI recording, which the government viewed as

2

primarily Jencks Act material;[1] and (3) thousands of pages of FBI documents and under seal pleadings, as well as hundreds of FBI recordings and intercepted telephone calls.

The first category of discovery, which constitutes virtually all of the discovery in the case, can be fairly characterized and summarized as financial and personal information. For example, it includes approximately 30,000 pages of records obtained from the Pacific Hospital of Long Beach and its affiliates relating to employee compensation and hospital billing records. It also includes, among other things, approximately 8,000 pages of receipts and billing records for defendant Thomas M. Calderon's company, the Calderon Group, and personal information such as the tuition expenses and grades of defendant Ronald S. Calderon's son.

On March 10, 2014, the government sent defense counsel the last draft of the proposed protective order and asked defense counsel if defense counsel had any objections to it (the "March 10th protective order"). See Ex. A. It took ten days for Mr. Geragos to finally reply to the government's email. See Ex. B. In his reply email, Mr. Geragos told the government that he had "no objection" to a protective that covered "financial and personal information." (Id.) The government reasonably interpreted this email from Mr. Geragos to mean that he had no objection to a protective order that covered the

---

[1] The government explained in its ex parte application that category 2 of the discovery was a "small universe of documents." To be clear, it is made up of approximately 15 witnesses' grand jury testimony, five witnesses' FBI 302s, and one FBI recording containing statements made by one witness.

first category of discovery, which was virtually all of the discovery in the case.[2]

Mr. Geragos now claims that he objects to any protective order that would protect anything beyond "<u>bank</u> records and personal <u>identifying</u> information." (Opp., p. 1) (emphasis added). This is inconsistent with what he told the government in his email on March 20, 2014. More importantly, such a limited protective order would, among other things, leave all of the receipts and billing records for defendant Thomas M. Calderon's company, the Calderon Group, and other extremely sensitive business and personal information, such as the tuition expenses and grades of defendant Ronald S. Calderon's son, completely unprotected.

        2.   <u>The Government Has Not Misrepresented the Scope of One of its Proposed Protective Orders to the Court</u>

Mr. Geragos next argues that the government misrepresented to the Court the scope of the March 10th protective order when it said it was only "slightly more expansive than the one Mr. Kopp proposed." (<u>Id.</u> at 2). According to Mr. Geragos, the March 10th protective order would have also included what is described as category 3 of the discovery above (i.e., "thousands of pages of FBI documents and under seal pleadings, as well as hundreds of FBI recordings and intercepted telephone calls"). (<u>Id.</u>) This is simply false. The March 10th protective order plainly states:

> [T]here are thousands of pages of FBI documents and under seal court pleadings, as well [*sic*] hundreds of FBI recordings and intercepted telephone calls, which the

---

[2] The government acknowledges that the term "financial" is ambiguous and that Mr. Geragos may have meant "bank records" when he used it, but that is not what he said and that is not what the government understood when it prepared its ex parte application.

4

>
> government also plans to turn over to the defendants in discovery.  <u>Unlike the other discovery items</u>, however, several portions of this discovery must be redacted before it can be turned over to the defendants.  <u>A protective order will not suffice</u> because the government believes it is not obligated, at this time, to disclose the redacted portions of the discovery to anyone outside of the government.

(Dkt. # 30, Ex. C) (emphasis added).  This language in the March 10th protective order makes clear that category 3 of the discovery would not be covered by the protective order.  It also makes clear that the documents that the government obtained pursuant to grand jury subpoena (category 1) and the "other discovery items," namely, the grand jury transcripts (category 2) would be covered by the protective order.

        3.    <u>Defendant Ronald S. Calderon's Counsel Is Encouraging the Court to Apply the Wrong Legal Standard</u>

As stated above, the dispute over the protective order really came down to category 2 of the discovery (i.e., "the grand jury testimony, a few FBI reports, and one FBI recording.").  Mr. Geragos argues that the government must "explain why there is <u>good cause</u> for a protective order covering grand jury testimony and FBI reports." This is the wrong legal standard for the Court to apply when deciding whether to issue a protective order.

Category 2 of the discovery is primarily comprised of witness statements that the government is under no obligation to turn over at this early stage of the proceedings.  Production of these materials is covered by the Jencks Act, which only requires the government to turn them over after the witness has "testified on direct examination."  See 18 U.S.C. § 3500(b).  The government's previous willingness to turn these items over to the defendants sooner, so that the defense would have ample time to review them before trial,

5

was conditioned upon the parties entering into a reasonable protective order.

Even assuming that the government had an obligation to turn the grand jury testimony over to the defendants at this early stage in the proceedings, which it does not, the Court could still issue a protective order with respect to the grand jury testimony without having to find "good cause" before doing so. There is a "traditional and fundamental policy" of keeping grand jury materials secret. See Grand Jury Investigation v. United States, 642 F.2d 1184, 1190 (9th Cir. 1981). Such secrecy exists for several reasons, including to encourage free and untrammeled disclosures by persons who have information and to protect the innocent accused who are exonerated by the grand jury's investigation. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 219 n.10 (1979). The Supreme Court requires that the party seeking disclosure of grand jury materials to demonstrate that such disclosure is needed to avoid "possible injustice" in another judicial proceeding. Id. at 221. Even if the moving party makes such a showing, the Court still has complete discretion to order that the disclosure of grand jury materials be done "at a time, in a manner, and subject to any other conditions that it directs." See Fed. R. Crim. 6(e)(3)(E).

In fact, the government routinely seeks protective orders for grand jury materials – not just in this case – which limit disclosure to that which is "necessary in preparation of the defense." The Supreme Court warned against routinely granting unlimited disclosure of grand jury materials once a criminal case was indicted:

> [T]he courts must consider not only the immediate effects [of disclosure] upon a particular grand jury, but also the possible effect upon the functioning of the future grand

6

>  juries.  Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties.  Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.

Id. at 222.  Accordingly, Mr. Geragos' attempts to have the Court apply a good cause standard when determining whether to issue a protective order relating to the grand jury testimony should be rejected.

          4.   The Government Was Not the Source of the Leaked Search Warrant Affidavit

Lastly, Mr. Geragos argues that the government would be unable to comply with any protective order and accuses the government of being "the source of [a] leaked affidavit" relating to the search of defendant Ronald S. Calderon's office.  Beyond categorically denying this baseless accusation and pointing out – once again – Mr. Geragos' utter failure to provide any evidence in support of it, the government will not address this argument because it relates to another motion Mr. Geragos filed in the Eastern District of California that is currently pending.  Nevertheless, the government has attached its response to that motion, lest the Court be concerned there is any truth to Mr. Geragos' accusation.  See Ex. C.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sign the proposed protective order attached to the government's ex parte application, which has been agreed to by defendant Thomas M. Calderon and his counsel.