UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**'O'**

| Case No. | 2:14-CR-00103-CAS | Date | August 6, 2015 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Pat Cuneo | Douglas Miller<br>Mack Jenkins |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) RONALD S. CALDERON | X | | X | MARK GERAGOS | X | | X |
| 2) THOMAS M. CALDERON | X | | X | SHEPARD KOPP | X | | X |

**Proceedings:** GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF OTHER ACTS (dkt. 53, filed April 20, 2015)

DEFENDANT RONALD CALDERON'S MOTION TO SUPPRESS EVIDENCE (dkt. 67, filed May 26, 2015)

DEFENDANT THOMAS CALDERON'S MOTION TO SEVER (dkt. 68, filed May 26, 2015)

## I. INTRODUCTION AND BACKGROUND

On February 20, 2014, a federal grand jury returned a 24-count indictment against former California State Senator Ronald Calderon ("R. Calderon") and his brother, former California State Assemblyman Thomas Calderon ("T. Calderon"). Dkt. 1. Counts 1 through 10 charge R. Calderon with executing a scheme to defraud the citizens of the State of California of their right to the honest services of their elected officials, in violation of 18 U.S.C. §§ 1341, 1343, and 1346. Id. Counts 11 through 14 allege that R. Calderon solicited and accepted bribes from Michael D. Drobot and two undercover FBI agents intending to be influenced in his official acts as a state Senator, in violation of 18 U.S.C. § 666(a)(1)(B). Id. Count 15 jointly charges R. Calderon and T. Calderon with conspiring to launder bribes received by R. Calderon from the undercover FBI agents, in violation of 18 U.S.C. § 1956(h), and Counts 16 through 22 charge

defendants with substantive acts of money laundering occurring between January and April 2013, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Id. Lastly, Counts 23 and 24 allege that R. Calderon falsely reported certain bribe payments from Drobot on his son's federal income tax returns for the tax years 2010 and 2011. Id.

Specifically, the indictment alleges that R. Calderon, while serving as a California State Senator for the 30th Senate District, accepted bribes in exchange for his advocacy in connection with two distinct pieces of legislation. First, R. Calderon allegedly accepted bribes from Michael Drobot, owner of Pacific Hospital of Long Beach ("Pacific Hospital"), in exchange for his advocacy against a legislative modification to the workers' compensation scheme that would decrease the profitability of certain spinal surgeries performed at Pacific Hospital (the "spinal pass-through"). In particular, Drobot allegedly provided R. Calderon with, inter alia, "employment for his son, trips on privately-chartered airplanes, golf at exclusive, high-end golf resorts, and meals at expensive restaurants." Indict. at 7.

Second, the indictment alleges that R. Calderon accepted bribes from two undercover FBI agents, posing as producers of independent films, in exchange for R. Calderon's support of legislation to amend a certain film tax credit to reduce the budget threshold for qualifying films from $1 million to $750,000 (the "film tax credit"). Id. at 8-10. Among other alleged bribes, the undercover FBI agents allegedly paid R. Calderon's daughter for work she never performed, and donated approximately $25,000 to Californians for Diversity ("CFD"), a tax-exempt public benefit corporation for which defendant T. Calderon served as CEO and President. Additionally, at the request of the undercover FBI agents, R. Calderon allegedly hired another individual—also an undercover FBI agent—to serve on his Senate staff.

The indictment further alleges that T. Calderon conspired with R. Calderon to launder the aforementioned bribes through CFD and the Calderon Group, a private consulting firm founded by T. Calderon when he left the California State Assembly in 2002. T. Calderon allegedly possessed "financial control" over both entities, Indict. at 20, and defendants allegedly used the laundered money for personal benefit.

Trial in this matter is currently set for March 1, 2016, and the parties have filed several pretrial motions. The Court heard argument on these motions on July 16, 2015, and August 6, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. MOTION TO SEVER

On May 26, 2015, defendant T. Calderon filed the instant motion to sever his trial from that of codefendant R. Calderon or, in the alternative, to sever Counts 15 through 22 from the Indictment. Dkt. 68. The government opposed this motion on June 16, 2015, dkt. 78, and defendant T. Calderon replied on June 29, 2015, dkt. 87.

Federal Rule of Criminal Procedure 8(b) permits the joinder of two or more defendants in the same indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Further, "defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Id. Courts have explained that the "term 'transaction' is interpreted flexibly, and whether a 'series' exists depends on whether there is a 'logical relationship' between the transactions." United States v. Vasquez-Velasco, 15 F.3d 833, 843 (9th Cir. 1994) (citations omitted). "A logical relationship is typically shown 'by the existence of a common plan, scheme, or conspiracy.' " Id. at 844 (citations omitted). "Mere factual similarity between the events is not a sufficient basis for joinder, [citation], nor is the mere showing that the events occurred at about the same time or that the acts violated the same statute." Id. at 843-44 (citations omitted). Because "[t]he goal of Rule 8(b) is to maximize trial convenience and efficiency with a minimum of prejudice, Rule 8(b) is construed liberally in favor of joinder." United States v. Sarkisian, 197 F.3d 966, 975 (9th Cir. 1999) (citations and quotations omitted). See also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together.").

However, courts have discretion to sever defendants' trials pursuant to Rule 14(a) where joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). When defendants properly have been joined pursuant to Rule 8(b), severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539 (1993). In evaluating any prejudicial effect of a joint trial, courts consider such factors as:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right

of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004) modified, 425 F.3d 1248 (9th Cir. 2005).

T. Calderon contends that severance is appropriate for two reasons. First, he asserts that the government has alleged two distinct fraudulent schemes—the spinal pass-through scheme and the film tax credit scheme—but has only charged T. Calderon with participation in the latter, and there is "no overarching conspiracy between the two." Mot. Sever at 2. Second, he argues that the majority of the evidence the government will introduce at trial is solely relevant to R. Calderon, creating a risk of unfair prejudice to T. Calderon. Id. at 8-9.

The Court begins with the propriety of joinder in the first instance. Here, Counts 1 through 10 of the indictment allege an overarching scheme, orchestrated by R. Calderon and others, to defraud California citizens of their right to R. Calderon's honest services as a State Senator through bribery, kickbacks, and concealment. United States v. Valenzuela, 596 F.2d 824, 829 (9th Cir. 1979) ("Ordinarily, the mere charging of a conspiracy count linking together substantive counts against various defendants fully satisfies the Rule 8(b) requirement of relatedness and makes joinder proper under that rule."). This scheme allegedly involved bribes associated with both the spinal pass-through and the film tax credit. Id. at 7-15. Although T. Calderon is correct that he is charged solely with laundering bribes associated with the film tax credit, T. Calderon's actions—as alleged by the government—are part of the honest services scheme.

Moreover, "[t]he goal of maximum trial convenience consistent with minimum prejudice is best served by permitting initial joinder of charges against multiple defendants whenever the common activity constitutes a substantial portion of the proof of the joined charges." Vasquez-Velasco, 15 F.3d at 844 (internal quotations and citations omitted). Here, to prove that T. Calderon laundered money, the government will need to show that he "conducted a financial transaction involving the property that represented the proceeds of criminal activity" and "knew that the property represented the proceeds of criminal activity." See Ninth Cir. Model Jury Instr. No. 8.147 (2010 ed.). The "criminal activity" to be proven by the government is R. Calderon's acceptance of bribes in exchange for legislative advocacy, which, in turn, serves as proof of the honest services charges against R. Calderon. Thus, proof that T. Calderon and R. Calderon laundered money constitutes a substantial portion of the proof of the joined charges. Accordingly, the Court concludes that joinder was appropriate.

With regard to severance, T. Calderon's arguments amount to a generic contention that a jury will be unable to compartmentalize evidence relevant exclusively to proving R. Calderon's guilt. But prejudice from a refusal "to sever counts can be cured by proper jury instructions, and juries are generally presumed to follow their instructions." United States v. Hickerson, 489 F.3d 742, 746 (5th Cir. 2007). See also United States v. Matta Ballesteros, 71 F.3d 754, 771 (9th Cir. 1995) opinion amended on denial of reh'g, 98 F.3d 1100 (9th Cir. 1996) ("Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence to each defendant."). Although T. Calderon emphasizes the "voluminous amount of discovery," contending that presentation of "this mountain of convoluted, disproportionate evidence" will result in prejudice, Reply at 2, he does not explain why a jury, provided with appropriate instructions, would be incapable of segregating this evidence. See United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir. 1987) ("When . . . the district court instruct[s] the jury to consider the guilt or innocence of each co-defendant separately, in light of the evidence against that defendant, the jury is presumed to have obeyed."). Moreover, that the government may possess more evidence of R. Calderon's alleged guilt than that of T. Calderon does not necessitate severance. See id. ("[T]he mere fact that a criminal defendant is jointly tried with a more culpable co-defendant is not alone sufficient to constitute an abuse of the district court's discretion."). See also Zafiro, 506 U.S. at 540 ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").

At bottom, T. Calderon has not demonstrated that a joint trial will "compromise a specific trial right . . . or prevent the jury from making a reliable judgment about [his] guilt or innocence." Zafiro, 506 U.S. at 539. Accordingly, the Court DENIES without prejudice defendant T. Calderon's motion to sever.

## III. MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF OTHER ACTS

On April 20, 2015, the government filed a motion *in limine* to introduce evidence of other acts pursuant to Rules 402, 403, and 404(b). Dkt. 53. Both defendants filed oppositions on June 16, 2015, dkts. 75, 77, and the government replied on June 30, 2015, dkt. 88.

In the instant case, the government proffers the following "other acts" evidence. First, the government seeks to present evidence that defendant R. Calderon allegedly told an undercover FBI agent ("UC-1") in 2012 that he entered into an agreement with the leadership of the California Latino Legislative Caucus (the "Latino Caucus"), not to challenge the reelection of the then-chairman in exchange for: "(1) a paid political appointment for himself when he left the Senate, (2) the ability to hire his own political consultant/fundraiser on behalf of the Latino

Caucus, and (3) a payment of $25,000 in seed money to hire the political consultant/fundraiser." Mot. Lim. at 9. According to bank records, the $25,000 payment was sent to CFD on January 2, 2013, just before T. Calderon allegedly began making monthly payments of $5,000 to $6,500 to the Calderon Group using CFD funds. Id.

Second, the government would introduce evidence that, during a conversation in which R. Calderon informed UC-1 that he had secured Senate employment for another undercover FBI agent ("UC-2")—whom defendant believed to be UC-1's girlfriend—R. Calderon allegedly commented that a recent newspaper article had criticized him for having staff members on the Senate payroll who rarely met. Id. at 9-10.

Lastly, the government proposes to present evidence that portions of bribes allegedly paid to R. Calderon by the undercover FBI agents in connection with the film tax credit, "under the guise of paying his daughter for set design consulting services at [the undercover agent's film] studio," were falsely reported on the daughter's tax return as monies earned working for T. Calderon at the Calderon Group. Id. at 10.

### A. Rule 404(b)

Pursuant to Rule 404(b), evidence of a defendant's crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). Rule 404(b) is an "inclusi[ve]" rule meaning "other acts evidence is admissible whenever relevant to an issue other than defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). Evidence is therefore admissible under Rule 404(b) if it (1) tends to prove a material fact; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the person committed the act; and (4) if admitted to prove intent or knowledge, the act is similar to that charged. United States v. Tsinnijinnie, 91 F.3d 1285, 1288-89 (9th Cir. 1996). Such evidence should be admitted "unless its prejudicial impact substantially outweighs its probative value" pursuant to Rule 403. United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997).

However, the Ninth Circuit has held that certain evidence "should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if 'the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined.' " United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012) (quoting United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987)). "Two general categories of other act evidence may be 'inextricably intertwined' with a charged crime and thus exempted from the

requirements of Rule 404(b)." Id. (citing United States v. Vizcarra-Martinez, 66 F.3d 1006, 1112 (9th Cir. 1995)). "First, other act evidence may 'constitute[ ] a part of the transaction that serves as the basis for the criminal charge.' " Id. (quoting Vizcarra-Martinez, 66 F.3d at 1112). "Second, admission of other act evidence may be 'necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.' " Id. (quoting Vizcarra-Martinez, 66 F.3d at 1112-13).

## B. Discussion

The government contends that R. Calderon's statements regarding the Latino Caucus are " 'inextricably intertwined' with the charges and are not subject to the same restrictions of Rule 404(b)." Id. at 11. According to the government, it should be "allowed to explain to the jury that UC-1 was not the first person defendant [R. Calderon] told to make a $25,000 payment to CFD." Id. The government further argues that this evidence is admissible pursuant to Rule 404(b), since it tends to prove that defendants exercised financial control over CFD, and corroborates R. Calderon's alleged statement to UC-1 that he and T. Calderon were "building up" the money in CFD in order to "pay themselves." Id. at 15. The government also asserts that this evidence demonstrates why R. Calderon could trust defendant T. Calderon to launder the $25,000 bribe. Id.

The government likewise contends that R. Calderon's alleged statements concerning the news article are "inextricably intertwined" with the charged offenses and are otherwise admissible under Rule 404(b). Id. at 13. In particular, the government asserts that R. Calderon referenced the news article intending to convey that the undercover agent hired to his Senate staff position would not be required to perform much work. Id. The government argues that "[i]t is important for the jury to understand that this was the nature of [the] Senate staff position because it tends to prove that defendant [R. Calderon's] decision with respect to [hiring] UC-2 was influenced by, and in exchange for, the bribes he was receiving from UC-1 and had very little, if anything, to do with UC-2's abilities." Id. at 13-14. The government further argues that this evidence suggests that the legitimate explanation R. Calderon provided to the Senate for hiring UC-2—i.e., that UC-2 would play an "integral" role in community outreach efforts—was false, thus tending to prove an element of the honest services fraud charge. Id. at 14.

As to evidence that R. Calderon and his daughter falsely reported certain alleged bribe payments in connection with the film tax credit, the government contends that this is admissible under Rule 404(b), since it tends to prove that R. Calderon intentionally misreported alleged

bribe payments on his son's tax returns, as charged in Counts 23 and 24 of the indictment. Id. at 17.

In opposition, defendant T. Calderon contends that the "other acts" evidence is not "inextricably intertwined" with the charged acts, since—in light of the voluminous discovery in this case—it is not necessary to provide context for the charged crimes. T. Calderon Opp'n at 4-5. Further, T. Calderon argues that the evidence is not necessary to explain the relationship between defendants, who are brothers, a fact that "already provides context regarding their relationship and the mutual trust between them." Id. at 6. Lastly, T. Calderon asserts that evidence of R. Calderon's statements "do not tend to prove any material point in connection with the charges against Thomas Calderon," and thus should be excluded under Rule 404(b). Id. at 7.

R. Calderon likewise asserts that the "other acts" evidence is not "inextricably intertwined" with the charged crimes, since it is not necessary to prove any of those crimes or to provide the jury with a "coherent story." R. Calderon Opp'n at 7-8. At bottom, however, R. Calderon contends that evidence the government seeks to admit is simply intended to "assassinate the Senator's character," and any probative value the evidence may carry is outweighed by unfair prejudice and should be excluded pursuant to Rule 403. Id. at 11.

As to R. Calderon's alleged statements regarding the Latino Caucus, the Court concludes that this evidence is not "inextricably intertwined" with the charged offenses. First, it is not part of the "transactions" that serve as the basis for the criminal charges against either defendant—namely, accepting and laundering bribes in connection with two proposed pieces of legislation, and the derivative honest service fraud and tax fraud charges. Second, although the government is correct that "evidence of other criminal activity may be used for the purpose of providing the context in which the charged crime occurred," United States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996), since "[t]he jury cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge," id., here, the jury will not be making its decision in such a void. Indeed, as the government notes, it possesses evidence that R. Calderon allegedly told UC-1 that he and T. Calderon used CFD money to "pay themselves." Such evidence sufficiently explains why R. Calderon would direct UC-1 to make bribe payments to CFD.

The statements, however, appear to be admissible pursuant to Rule 404(b), since they tend to prove that CFD, though nominally a charitable entity, was in fact controlled by defendants for their own personal benefit. Nonetheless, it is unclear whether defendants will testify to the legitimacy of CFD; indeed, the government acknowledges this uncertainty in its

briefing. Mot. Lim. at 13 (asserting that R. Calderon will "likely argue . . .that it would make no sense for him to direct a $25,000 bribe payment to CFD[,] a charitable organization[] he had no control over"). The Court thus cannot rule on the admissibility of the Latino Caucus statements at this juncture, and will revisit this issue at trial.

As to R. Calderon's statements to UC-1 regarding the newspaper article, such evidence is not inextricably intertwined with the underlying charges and, at this point in time, it does not appear to past muster under Rule 404(b). First, these statements are not part of the charged crimes. And, contrary to the government's assertions, the statements do not provide necessary context concerning the nature of UC-2's employment, since UC-2 is presumably able to testify to these facts. Moreover, it is unclear to the Court how R. Calderon's comment that a recent newspaper article had criticized him for employing staff members who did not meet frequently tends to prove any material fact, much less that defendant allegedly lied to the legislature in obtaining employment for UC-2. Indeed, it appears that the government seeks to impermissibly use this comment as a backdoor for the admission of the newspaper article, which not only constitutes hearsay, but might also be used by the jury to conclude that defendant has a propensity for hiring staffers who do not actually perform work. United States v. McCourt, 925 F.2d 1229, 1232 (9th Cir. 1991) ("Under Rule 404(b), 'other crimes' evidence may be offered by any party for a purpose other than proving criminal propensity or conforming conduct."). Accordingly, these statements do not appear to be admissible at this time.

Lastly, the Court cannot conclude at this juncture that evidence concerning the alleged misreporting of bribes on R. Calderon's daughter's tax returns is proper under Rule 404(b). The government intends to use this evidence to prove that the alleged misreporting of bribe income on R. Calderon's son's tax returns was willful. However, the government's position presupposes that R. Calderon will argue that such misreporting was a mistake. Unless and until R. Calderon proffers such an argument, the Court cannot conclude that the government's proposed evidence is relevant.

In sum, because the relevance and necessity of much of the government's "other acts" evidence turns on the arguments ultimately proffered by defendants at trial, the Court DENIES the government's motion without prejudice to its being renewed at trial.

## IV. MOTION TO SUPPRESS SEARCH WARRANT

On May 26, 2015, defendant R. Calderon filed the instant motion to suppress evidence seized from his office at the California State Capitol on June 4, 2013, pursuant to a search

warrant issued that same day. Dkt. 67. The government opposed the motion on June 16, 2015, dkt. 80, and defendant replied on June 30, 2015, dkt. 90.

On June 4, 2013, the government obtained a warrant permitting it to search defendant R. Calderon's Senate office, located at the California State Capitol in Sacramento, California. Gov't Opp'n, Ex. A (Application for Search Warrant ("Application")). The warrant was signed by the Honorable Dale A. Drozd, United States Magistrate Judge for the Eastern District of California. Id. According to the 127-page affidavit of FBI Special Agent Teresa Tampubolon filed in support of the warrant application, defendant R. Calderon had been the subject of an FBI investigation since October 2007. Tampubolon Aff. at 10. The affidavit further states that R. Calderon, in his capacity as a State Senator, accepted approximately $120,000 in bribe payments in exchange for his agreement to advance certain pieces of legislation, and for hiring the purported girlfriend of an individual whom defendant believed was the owner of a studio but who was, in fact, an undercover FBI agent. Id. at 5-7.[1]

The June 4, 2013 warrant application divided the items sought by the FBI into the following seven categories: (1) film tax credit legislation; (2) the hiring of the legislative staffer; (3) spinal surgery legislation; (4) teacher evaluation legislation; (5) financial, travel and business records; (6) ethical and financial disclosure; and (7) digital evidence. Application at 1-9. As is relevant here, under categories (1), (2), (3), and (4), the application sought, inter alia, "[a]ll communications with Ronald Calderon . . . , Ronald Calderon's staff, . . . other legislators and their staff, and legislative counsel." Id. at 1-4. Under category (6), the application sought "any materials (other than those protected by an attorney-client privilege) regarding the ethical rules . . . relating to gifts, bribes, and/or gratuities to . . . officeholders, including any materials from the California State Senate Ethics Orientation Program, . . . the Office of Legislative Counsel, and the Fair Political Practices Commission." Id. at 6. The warrant was executed the same day it was authorized.

R. Calderon contends that all evidence seized from his Senate office pursuant to the June 4, 2013 warrant must be suppressed for two reasons. First, presumably invoking the Fourth Amendment requirement that a warrant be issued by a "neutral and detached magistrate,"

---

[1] On May 2, 2013, the Honorable Kendall J. Newman, United States Magistrate Judge for the Eastern District of California, also authorized a search of defendant's State Capitol office. Id. at 9. The affidavit submitted in support of the May 2, 2013 search warrant was subsequently leaked to *Al Jazeera* in October 2013. This warrant expired, however, before the FBI could execute the search.

United States v. Heffington, 952 F.2d 275, 277 (9th Cir. 1991), defendant contends that Judge Drozd should have recused himself pursuant to 28 U.S.C. § 455 because he is the brother-in-law of Diane Boyer-Vine, Legislative Counsel for the State of California. See generally Mot. Suppress. Second, he asserts that the materials are privileged under the Speech or Debate Clause of the United States Constitution or, alternately, California Civil Code Section 47. Id. Notably, defendant does not attack the validity of the warrant itself.[2]

The Court begins with defendant's assertion that the evidence must be suppressed due to Judge Drozd's relationship to Boyer-Vine. In pertinent part, 28 U.S.C. § 455 provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances: . . . [¶] (5) He or his spouse, or a person *within the third degree of relationship* to either of them, or the spouse of such a person: . . .
>
>> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>>
>> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(a), (b)(5)(i)-(iv) (emphasis added).

A judge must recuse himself pursuant to section 455(a) if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be

---

[2] Pursuant to the Fourth Amendment, any evidence that is the product of an illegal search or seizure must be suppressed. United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1063 (9th Cir. 1994). When a search is authorized by a warrant, "[t]he validity of [the] search warrant depends upon the sufficiency of what is found within the four corners of the underlying affidavit." United States v. Taylor, 716 F.2d 701, 705 (9th Cir. 1983). "An affidavit is sufficient if it establishes probable cause." Id. Probable cause exists "if the facts alleged [in the affidavit] would allow a person of reasonable caution to believe that the evidence sought will be found in the stated place." United States v. Martinez, 588 F.2d 1227, 1234 (9th Cir. 1978).

questioned." United States v. Holland, 519 F.3d 909, 913 (9th Cir. 2008) (quoting Clemens v. U.S. Dist. Ct., 428 F.3d 1175, 1178 (9th Cir. 2005)). "The reasonable third-party observer is not a partly informed man-in-the-street, but rather someone who understand[s] all the relevant facts and has examined the record and law." Id. at 914. (internal quotations omitted). The inquiry requires "an independent examination of the unique facts and circumstances of the particular claim at issue." Id. at 913. In contrast, "section 455(b) provides . . . concrete example[s] where the appearance of partiality suffices to establish a ground for recusal under section 455(a) even absent actual bias." Preston v. United States, 923 F.2d 731, 734 (9th Cir. 1991).

With regard to section 455(b), defendant contends that Boyer-Vine, who is "within the third degree of relationship" to Judge Drozd, possessed an interest in the film tax credit legislation, and that her position as legislative counsel "may have very well designated her as a witness . . . against defendant." Id. at 6. Defendant also asserts that "Boyer-Vine has challenged Senator Calderon in the past on the very proposed legislation connected to the charges in this case." Id. Defendant, however, does not specify Boyer-Vine's alleged interest in the legislation—let alone how it might be "substantially affected" by the outcome of the warrant application—the substance of her challenge to Senator Calderon, or why she is likely to be called as a witness. Moreover, defendant has not attempted to establish that Boyer-Vine's unidentified "interest" was "known by" Judge Drozd, or that he possessed "knowledge" that Boyer-Vine was likely to be a material witness. In contrast, the government proffers the affidavit of Boyer-Vine, who confirms that Judge Drozd is her brother-in-law but avers that she had "no prior communication" with him on the Calderon matter. Boyer-Vine Decl. ¶¶ 6, 7.[3] Thus, at bottom, it appears that defendant's section 455(b) recusal argument amounts to little more than speculation.

As to section 455(a), defendant contends that Judge Drozd, knowing his sister-in-law to be the appointed Legislative Counsel for the state, should have recused himself "on this basis alone," and his "failure to do so calls into question his ability to have been impartial in . . . his decision to issue the warrant." Mot. Suppress at 5. In support, defendant relies on Mangini v. United States, 314 F.3d 1158 (9th Cir.) opinion amended on denial of reh'g, 319 F.3d 1079 (9th

---

[3] Boyer-Vine further avers that, on the day the instant search warrant was executed, she received a phone call from R. Calderon's counsel, Mr. Geragos, with whom she shared "what little [she] knew of the day's events." Id. ¶ 8. Although, "in the interest of full disclosure," Boyer-Vine mentioned that Judge Drozd was her brother-in-law, "Mr. Geragos did not express concern to [her] over this at that time or since." Id.

Cir. 2003) and Preston v. United States, 923 F.2d 731, 732 (9th Cir. 1991). In Mangini, the court concluded that section 455(b)(5)(ii)—which defendant does not invoke here—"clearly require[d]" the presiding judge to recuse himself from a tort action, since the judge's brother-in-law was employed by the firm representing the plaintiff and had performed work in connection with the action. 314 F.3d at 1161.[4] In Preston, the court concluded that recusal was mandatory under the plain language of section 455(b), which requires a judge to recuse himself where "a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." 923 F.2d at 734. Specifically, the judge in Preston had worked for a major law firm and, although the firm did not represent a party to the litigation, it did represent the plaintiff's employer—against whom a potential claim for indemnification would have been triggered, depending on the litigation's outcome. Id. at 732.

Neither of these cases is on point. More importantly, however, defendant makes no effort to engage in section 455(a)'s "necessarily fact-driven" recusal analysis, which "may turn on subtleties in the particular case," Holland, 519 F.3d at 913. Such a fact-driven inquiry, moreover, supports the conclusion that a reasonable person with knowledge of the facts and law would *not* question the impartiality of Judge Drozd.

First, as noted above, Boyer-Vine avers that she did not discuss the Calderon matter with Judge Drozd prior to his approval of the warrant. Second, the term "legislative counsel," as set forth in the warrant application, refers to the Office of Legislative Counsel. The Office of Legislative Counsel "assist[s] the Legislature, the Governor, and other state officers by providing nonpartisan legal services relating to the legislative process." Boyer-Vine Decl. ¶ 1. The Office oversees the operation of the Legislative Data Center and employs 600 individuals, including eighty-one attorneys who serve in the position of deputy or principal deputy legislative counsel. Id. ¶¶ 2,3,5. Among many other tasks, deputies counsel Members of the Legislature concerning legislative proposals, and respond to legislative inquiries from Members and their staff. Id. ¶ 4. Simply put, the term "legislative counsel" does not refer specifically to Boyer-Vine; rather, it refers to a team of attorneys and support staff. Indeed, Boyer-Vine's name appears nowhere in the affidavit supporting the warrant application. In light of this, a reasonable person with knowledge of the facts would not question Judge Drozd's impartiality.

More to the point, however, two years have passed since Judge Drozd approved the warrant at issue—and defense counsel has been aware of the relationship between Boyer-Vine

---

[4] Section 455(b)(5)(ii) requires recusal where a person within the third degree of relationship to the judge or his spouse "is acting as a lawyer in the proceeding."

and Judge Drozd since that time. Id. ¶ 8; Geragos Decl. ¶ 4. As the Supreme Court has explained, "[a]lthough § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862 (1988) ("Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation."). Here, the appropriate remedy would be to quash the warrant—a remedy that defendant could have sought as soon as he learned of the challenged relationship on June 4, 2013. Defendant, however, opted not to pursue this remedy, instead waiting two years to protest Judge Drozd's alleged partiality in the instant motion to suppress. See Preston, 923 F.2d at 733 ("We require recusal motions to be lodged in a timely fashion because the absence of such a requirement would result in . . . a heightened risk that litigants would use recusal motions for strategic purposes.").

Moreover, defendant offers no explanation as to why the extraordinary remedy of suppression is warranted. See Liljeberg 486 U.S. at 862 ("As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance. There need not be a draconian remedy for every violation of § 455(a)."). Indeed, although the government expressly raises this issue in opposition, further noting that defendant does not challenge the existence of probable cause to support the search warrant, Opp'n at 9, defendant proffers no countervailing arguments.[5]

Lastly, defendant's contentions concerning the applicability of the Speech or Debate Clause and California Civil Code Section 47 are without merit. First, the Speech or Debate

---

[5] In reply, defendant does request an evidentiary hearing into the "question regarding how Ms. Boyer-Vine 'stood to benefit' " from the execution of the search warrant. Reply at 3. This request is moot, however, since it would not alter the Court's conclusion that the remedy for a violation of section 455 is not the exclusion of evidence seized pursuant to a search warrant supported by probable cause. Moreover, defendant's characterization of the nature of such a hearing—during which defendant would inquire into "whether [Boyer-Vine] obtained information intel from Judge Drozd, whether she communicated it with any other individual in advance of the execution of the search, and whether she failed to assert privileges on behalf of Senator Calderon as a result of her relationship with Judge Drozd," id. at 3—underscores the Court's conclusion that a reasonable person would not question Judge Drozd's impartiality. See Holland, 519 F.3d at 913 ("The 'reasonable person' is not someone who is 'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.' " (internal citation omitted)).

Clause establishes a *federal* legislative privilege that does not apply to members of *state* legislatures. United States v. Gillock, 445 U.S. 360, 374 (1980) ("The Federal Speech or Debate Clause . . . by its terms is confined to federal legislators.").[6] Defendant thus cannot avail himself of the Speech or Debate Clause's protections.

Second, defendant makes passing reference to Cal. Civ. Code section 47 and contends that it applies to all evidence seized pursuant to the June 4, 2013 warrant. Mot. Suppress at 9. Section 47 extends a privilege to "a publication or broadcast" made "[i]n the proper discharge of an official duty" or "[i]n any (1) legislative proceeding, (2) judicial proceeding, [or](3) in any other official proceeding authorized by law[.]" Cal. Civ. Code § 47(a), (b). Defendant makes no effort to explain why, or how, section 47 applies to any single piece of evidence seized by the government. Even assuming he had proffered such an explanation, Federal Rule of Evidence 501 "requires the application of federal privilege law in criminal cases brought in federal court." Gillock, 445 U.S. at 368 (concluding that Tennessee's Speech or Debate Clause could not be invoked by a Tennessee state senator in a federal criminal prosecution). Section 47 thus has no bearing on the instant analysis.

In sum, defendant's motion to suppress evidence seized pursuant to the June 4, 2013 search warrant is without merit. Accordingly, the Court DENIES the motion.

## V. CONCLUSION

In accordance with the foregoing, the Court DENIES without prejudice defendant Thomas Calderon's motion to sever. The Court DENIES without prejudice the government's motion to introduce evidence of defendant Ronald Calderon's "other acts." The Court DENIES defendant Ronald Calderon's motion to suppress evidence seized pursuant to the June 4, 2013 search warrant.

IT IS SO ORDERED.

00 : 13

Initials of Deputy Clerk CMJ

cc: Pretrial Service

[6] The Speech or Debate Clause provides: "The Senators and Representatives shall . . . be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1.